940 So.2d 1041 (2005)
Gregory HUNT
v.
STATE of Alabama.
CR-02-0813.
Court of Criminal Appeals of Alabama.
August 26, 2005.
Opinion Granting Rehearing November 23, 2005.
Certiorari Denied April 21, 2006.
*1047 John A. Lentine, Birmingham; and Arnold Levine, New York, New York, for appellant.
William H. Pryor, Jr., and Troy King, attys. gen., and Jon B. Hayden and Corey L. Maze, asst. attys. gen., for appellee.
Alabama Supreme Court 1050302.
*1048 WISE, Judge.
The appellant, Gregory Hunt, appeals the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim.P., attacking his capital-murder conviction and his sentence of death.
In 1990, Hunt was convicted of three counts of capital murder for murdering Karen Lane during the course of a burglary and during the course of sexual abuse. The jury, by a vote of 11 to 1, recommended that Hunt be sentenced to death. The circuit court followed the jury's recommendation and sentenced Hunt to death. Hunt's conviction and death sentence were affirmed on direct appeal. See Hunt v. State, 659 So.2d 933 (Ala.Crim. App.1994), aff'd, 659 So.2d 960 (Ala.), cert. denied, 516 U.S. 880, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995). This Court issued the certificate of judgment in May 1995.
In February 1997, Hunt filed a petition for postconviction relief pursuant to Rule 32, Ala.R.Crim.P. An amended petition was filed in March 2002. After an evidentiary hearing in June 2002, the circuit court denied the Rule 32 petition. Hunt appealed. The certified transcript was filed with this Court, and this Court set up a briefing schedule. Hunt's counsel filed a brief. Hunt then submitted a pro se brief. This Court, citing Rule 31(a), Ala.R.App. P.,[1] returned the pro se brief because Hunt was represented by counsel on appeal. Hunt then filed a mandamus petition in the Alabama Supreme Court requesting that that court direct this Court to accept and consider his pro se brief. The Supreme Court denied that mandamus petition in June 2003. See Ex parte Hunt, (No. 1021304).
The circuit court's order sentencing Hunt to death states the following concerning the facts surrounding the murder:
"In the early morning hours on August 2, 1988, Ms. [Karen] Lane's bludgeoned body was discovered in Ms. [Tina Gilliland] Cook's apartment.
"According to the testimony of Dr. Joseph Embry of the Alabama Department of Forensic Sciences, Ms. Lane sustained a total of 60 injuries which included: 20 injuries to the head; 12 fractured ribs on the left side and 12 fractured ribs on the right side; her breast bone was fractured; she sustained bruises in her heart; three tears to her liver; bruises to the lungs; a three-quarter-inch tear to the aorta; a bruised pancreas; and, bleeding in the muscles to the side of the neck.
"Next to the body a bar stool was recovered with a quantity of blood on it as well as hair attached to it. Between her legs a broomstick was recovered. . . .
"According to Larry Huys, Alabama Department of Forensic Sciences Serologist, who took vaginal, oral and anal swabs as well as secretions from the armpit and hair samples, sperm was found in Ms. Lane's mouth. . . .
"John Vaughn, Director of Regional Drug Unit, testified that blood was found in the apartment in two rooms upstairs. A bloody palm print was recovered from the fifth step which was successfully matched to the defendant. Fingerprints taken from a window screen on a broken window located at the rear of the apartment included Mr. Hunt's left, ring, right palm and right index finger prints."
*1049 (C.R. 1045.)[2] A neighbor of Ms. Cook's, Mary Turner, testified that around the time of the murder she heard a noise like glass breaking and looked out of her window and saw Hunt entering Ms. Cook's apartment. Although we did not detail the facts surrounding the murder in our opinion on direct appeal we noted: "Our review of the record convinces us that the evidence against the appellant was, in fact, overwhelming." Hunt, 659 So.2d at 941.

Standard of Review
Hunt appeals the denial of his petition for postconviction relief attacking his capital-murder conviction and death sentence. In a postconviction proceeding under Rule 32, Ala.R.Crim.P., the petitioner bears the sole burden of pleading and proof. "The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Rule 32.3, Ala. R.Crim.P.
The standard of review this Court uses in evaluating the rulings made by the trial court is whether the trial court abused its discretion. See Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992). However, "[w]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court's review in a Rule 32 proceeding is de novo." Ex parte White, 792 So.2d 1097, 1098 (Ala. 2001). "If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition." Reed v. State, 748 So.2d 231, 233 (Ala.Crim.App.1999). The plain-error standard of review does not apply when this Court evaluates the denial of a collateral petition attacking a death sentence. See Ex parte Dobyne, 805 So.2d 763 (Ala.2001), and Rule 45A, Ala.R.App.P. The procedural bars in Rule 32, Ala. R.Crim.P., apply to all cases, even those involving the death penalty. Hooks v. State, 822 So.2d 476 (Ala.Crim.App.2000).

I.
Hunt argues that he was deprived of a full and fair postconviction hearing because, he argues, the circuit court denied him the opportunity to submit evidence by affidavits. Hunt argues that the affidavits, executed by members of Hunt's family, would establish mitigating evidence concerning Hunt's troubled childhood. He further argues that the circuit court erred in excluding the testimony of cocounsel regarding statements made to cocounsel by members of Hunt's family.
The following occurred at the evidentiary hearing on the Rule 32 petition:
"[Defense counsel]: Judge, the live witnesses we anticipated that we served notice of with the hope that they would be here to testify, they're not here to testify. And in lieu of them, I would hope that Your Honor would allow me to put Ms. [Mary Lynne] Wurelwas [an attorney assisting defense counsel] on who has spoken to two of those witnesses and that will be regarding the penalty-phase ineffective assistance.
"[Assistant attorney general]: Your Honor, if he's talking about making someor letting his associate testify as to what someone else has testified, the State is going to vigorously object to that.
"The Court: Well, I understand that.
"[Assistant attorney general]: That is nothing but rank hearsay.

*1050 "The Court: Where are these people? Do you know?
"[Defense counsel]: I don't know where they are right now, no.
"The Court: Who are they?
"[Defense counsel]: They're family members of Greg Hunt.
"The Court: Oh, okay.
"[Defense counsel]: Specifically, Kim Abreu, who is one of Greg's sisters and Jeff Hunt, one of Greg's brothers. With respect to the hearsay objection, Judge, at the sentencing proceeding hearsay would have been admissible."
(R. 75-76.)[3]
Hunt first argues that excluding the affidavits violated the clear wording of Rule 32, Ala.R.Crim.P. Rule 32.9(a), Ala.R.Crim. P., states, in pertinent part:
"Unless the court dismisses the petition, the petitioner shall be entitled to an evidentiary hearing to determine disputed issues of material fact, with the right to subpoena material witnesses on his behalf. The court in its discretion may take evidence by affidavits, written interrogatories, or depositions, in lieu of an evidentiary hearing, in which event the presence of the petitioner is not required, or the court may take some evidence by such means and other evidence in an evidentiary hearing."
(Emphasis added.)
Rule 32.9(a), Ala.R.Crim.P., is discretionary, not mandatory and leaves the question of the admission of evidence by affidavits to the discretion of the trial court. This Court has upheld a circuit court's exclusion of affidavits when those affidavits were introduced for the first time at the Rule 32 evidentiary hearing. In Hamm v. State, 913 So.2d 460 (Ala. Crim.App.2002), we stated the rationale for this holding:
"Rule 32.9(a), Ala.R.Crim.P., provides that a court has the discretion to take evidence by affidavit. As Hamm argues on appeal, postconviction counsel was aware of Dr. [Dale] Watson and the substance of his testimony, but did not call him to testify at the hearing. If the court had admitted the affidavit, the State would not have been able to examine Dr. Watson about his education and expertise, his testing methods, the validity of his conclusions, or any other areas appropriate for cross-examination. As this Court stated in Callahan v. State, when addressing similar circumstances:
"`"The admission of the affidavit would have denied the State its right to cross-examine the witness. Additionally, the State did not know of the existence of the affidavit until the evidentiary hearing, so the State was also deprived of the opportunity to prepare a counter affidavit."
"` . . . We cannot say the trial abused its discretion when it refused to consider the affidavit in the absence of absence of evidence that the affiant was actually unavailable, especially considering that the testimony was offered in such a fashion. . . . Presenting the testimony by affidavit prevented the State from confronting the affiant, and did not allow the trial court the opportunity to closely examine the complete testimony. . . . Rule 32.9(a), Ala.R.Crim.P.'
"Callahan, 767 So.2d 380, 403 (Ala.Crim. App.1999), cert. denied, 767 So.2d 405 (Ala.2000). See also McNair v. State, 706 So.2d 828, 838 (Ala.Crim.App.), cert. denied, 706 So.2d 828 (Ala.1997), cert. denied, 523 U.S. 1064 (1998)."
*1051 913 So.2d at 478-79 (footnote omitted). For the reasons stated in Hamm, the circuit court did not err in excluding the affidavits because they were introduced for the first time at the evidentiary hearing.
Hunt also argues that the circuit court erred in not admitting the testimony of cocounsel which consisted of hearsay statements made to her by Hunt's family members. He asserts that hearsay evidence is admissible at the penalty phase of a capital-murder trial; therefore, hearsay evidence was admissible at his Rule 32 proceeding. Hunt's argument is misplaced.
The Alabama Rules of Evidence apply to Rule 32 proceedings. Rule 804, Ala.R.Evid., specifically excludes hearsay evidence. We addressed this identical issue in Giles v. State, 906 So.2d 963 (Ala. Crim.App.2004), overruled on other grounds, Ex parte Jenkins, [Ms. 1031313, April 8, 2005] ___ So.2d ___ (Ala.1005), and stated:
"Giles specifically argues that the circuit court erroneously failed to consider the hearsay testimony of two witnesses as to what Giles told them about a drug relationship between him and Carl Nelson. Giles argues that the circuit court misapplied the evidentiary rules governing capital sentencing because hearsay evidence is admissible at the sentencing portion of a capital-murder trial.
"However, what Giles fails to consider is whether the Rules of Evidence apply to Rule 32 proceedings. See Rule 101, Ala.R.Evid., and Rule 1101(a), Ala.R.Evid., which states, in part, `these rules of evidence apply in all proceedings in the Courts of Alabama. . . .' Rule 1101(b), Ala.R.Evid., lists the proceedings exempt from application of the Rules of Evidence. Those proceedings include proceedings concerning preliminary questions of fact, grand jury proceedings, extradition proceedings, preliminary hearings in criminal cases, sentencing or probation revocation hearings, proceedings related to the issuance of a warrant of arrest, criminal summonses, or search warrants, bail proceedings, and contempt proceedings.
"The Rules of Evidence apply to postconviction proceedings. See DeBruce v. State, 890 So.2d 1068 (Ala.Crim.App. 2003). Rule 804, Ala.R.Evid., specifically excludes hearsay evidence. The circuit court correctly applied existing law and excluded the hearsay statements presented concerning an alleged drug relationship between Giles and one of the victims. After excluding the hearsay evidence, the circuit court was left with no lawful evidence to support this contention. Relief was correctly denied on this ground. See DeBruce, supra."
906 So.2d at 985-86. The circuit court committed no error in excluding the affidavits and the hearsay testimony of cocounsel.

II.
Hunt argues that the circuit court applied the incorrect standard when evaluating his claims of ineffective assistance of counsel. Specifically, he argues that the circuit court applied this Court's holding in Williams v. State, 783 So.2d 108, 133 (Ala. Crim.App.2000), and that the law this Court relied on in WilliamsState v. Clark, 913 S.W.2d 399 (Mo.Ct.App.1996) was subsequently reversed by the Missouri Supreme Court in Deck v. State, 68 S.W.3d 418 (Mo.2002), rev'd on other grounds, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005).
In Williams, this Court held:
"`[B]ecause we determined that the remarks did not constitute plain error even if objectionable, appellant cannot relitigate the issue under the guise of *1052 ineffective assistance of counsel in a post-conviction proceeding. A finding of no manifest injustice under the "plain error" standard on a direct appeal serves to establish a finding of no prejudice under the test for ineffective assistance of counsel provided in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).'
"State v. Clark, 913 S.W.2d 399, 406 (Mo.Ct.App.1996)."
Williams, 783 So.2d at 133.
In Deck v. State, 68 S.W.3d 418 (Mo. 2002), the Missouri Supreme Court reversed the lower court's holding in State v. Clark and stated:
"Various opinions have taken this language from Sidebottom [v. State, 781 S.W.2d 791 (Mo. banc 1989)], and from two of this Court's later cases, out of context and have incorrectly concluded that `[a] finding of no manifest injustice on direct plain error review establishes a finding of no prejudice for purposes of the Strickland [v. Washington, 466 U.S. 668 (1984),] test.' . . . In so doing, they have lost sight of the difference in the standards of review Strickland teaches are applicable on plain error review as opposed to on post-conviction review. More specifically, while, under Missouri law, plain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome determinative, State v. Armentrout, 8 S.W.3d 99, 110 (Mo. banc 1999), Strickland clearly and explicitly holds that an outcome-determinative test cannot be applied in a post-conviction setting. 466 U.S. at 693, 104 S.Ct. 2052. Therefore the two tests are not equivalents. To the extent that the cases relied on by the State and other Missouri cases apply a different standard, they are inconsistent with Strickland and should no longer be followed."
68 S.W.3d at 427 (footnotes omitted).
The decision in Deck is premised on the fact that Missouri's plain-error standard of review is a stricter standard of review than the standard employed to establish prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[U]nder Missouri law, plain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome determinative. . . ." Deck, 68 S.W.3d at 427. This test requires that the defendant show that the verdict would have been different.
However, Alabama's plain-error standard of review contained in Rule 45A, Ala. R.App.P., is not an outcome-determinative test and imposes a lighter burden than does the Missouri standard. Rule 45A, Ala.R.App.P., states:
"In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
(Emphasis added.) Alabama's plain-error standard is similar to the standard used to establish prejudice in Strickland.[4]
*1053 Thus, the fact that this Court relied on Clark and that that decision has since been overruled has no impact on Alabama's application of the principle first announced by this Court in Thomas v. State, 766 So.2d 860 (Ala.Crim.App.1998), and applied in Williams, because Alabama does not employ an outcome-determinative test for reviewing a death-penalty case for plain error.
Moreover, our holding in Williams was not dependent on the Missouri Court of Appeals' decision in State v. Clark. In Williams we also cited an earlier Alabama case that held that a finding of no plain error precludes a finding of prejudice under Strickland. See Thomas v. State, 766 So.2d 860 (Ala.Crim.App.1998). Thomas did not rely on Clark. As this Court first stated in Thomas v. State, 766 So.2d at 953:
"However, Thomas has failed to establish the two prongs of Strickland v. Washington. In implicitly rejecting the underlying substantive issue as failing to present any plain error, Rule 45A, Ala. R.App.P., the Alabama Supreme Court implicitly found that the alleged error did not or probably did not adversely affect the substantial right of Thomas. Thus, we must concur with the attorney general that Thomas's ineffective trial counsel argument fails because, by virtue of the Alabama Supreme Court's implicit ruling, Thomas cannot satisfy the prejudice prong of Strickland."[5]
Our conclusion that a finding of no plain error under Rule 45A, Ala.R.App.P., precludes a finding of no prejudice under Strickland is also consistent with other jurisdictions that have addressed this issue. As the Illinois Court of Appeals stated in People v. Love, 327 Ill.App.3d 313, 261 Ill.Dec. 580, 763 N.E.2d 829 (2002):
"To satisfy the prejudice prong [of Strickland,], defendant must show his counsel's errors were so serious as to deprive the defendant of a fair trial. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The Supreme Court of Illinois has held the plain error rule provided by Supreme Court Rule 615(a) (73 Ill.2d R. 615(a)) protects a defendant from prejudice caused by his counsel's failure to preserve an error because the rule allows the reviewing court to consider unpreserved errors affecting substantial rights. People v. Carlson, 79 Ill.2d 564, 585, 38 Ill.Dec. 809, 404 N.Ed.2d 233, 242-43 (1980). Having held none of the forfeited errors presented on appeal would have resulted *1054 in a new trial for defendant, the failure to preserve those errors did not prejudice him. See People v. Alexander, 212 Ill.App.3d 1091, 1105, 157 Ill.Dec. 56, 571 N.E.2d 1075, 1085 (1991)."
327 Ill.App.3d at 324, 261 Ill.Dec. at 589, 763 N.E.2d at 838.[6] See also Ramirez-Burgos v. United States, 313 F.3d 23, 32 n. 12 (1st Cir.2002), cert. denied, 537 U.S. 1167, 123 S.Ct. 981, 154 L.Ed.2d 907 (2003) ("By deciding that Ramirez would have been unable to establish plain error on direct review [he] thus cannot establish that his appellate counsel was ineffective under the second prong of Strickland. . . ."); People v. Easley, 192 Ill.2d 307, 332, 249 Ill.Dec. 537, 555, 736 N.E.2d 975, 993 (2000) ("Since the actions complained of did not rise to the level of plain error, the failure of defendant's trial counsel to object thereto did not prejudice defendant under Strickland."); United States v. Hall, 326 F.3d 1295, 1301 n. 10 (D.C.Cir.2003) (court used same prejudice standard to review both plain-error claim and ineffective-assistance-of-counsel claim).
Though our decision in Williams cites a case that has been reversed, the holding in Williams is still good law. See Taylor v. State, [Ms. CR-02-0706, August 27, 2004] ___ So.2d ___ (Ala.Crim.App.2004) (Cobb and Shaw, JJ., concurring in part and dissenting in part). The circuit court committed no error in relying on this Court's holding in Williams when evaluating Hunt's claims of ineffective assistance of counsel.

III.
Hunt further argues that the circuit court incorrectly relied on our holding in Charest v. State, 854 So.2d 1102 (Ala.Crim. App.2002), to conclude that many of Hunt's ineffective-assistance-of-counsel claims raised in his amended Rule 32 petition were time-barred because they did not relate back to any claims raised in the timely filed Rule 32 petition.
Recently, the Alabama Supreme Court in Ex parte Jenkins, [Ms. 1031313, April 8, 2005] ___ So.2d ___ (Ala.2005),[7] overruled Charesta case in which this Court applied the relation-back doctrine to Rule 32 petitions. The Jenkins court stated the reasoning for its decision:
"Given the direction in the Alabama Rules of Criminal Procedure that amendments to Rule 32 petitions are to be allowed at any time before the trial court enters a judgment, Rule 32.7(b), and that leave to amend is to be freely granted, Rule 32.7(d), we conclude that a restriction on a Rule 32 petitioner's right to file an amendment by applying principles found in the Alabama Rules of Civil Procedure, such as the relation-back doctrine, should be the subject of careful consideration by the Standing Committee on the Alabama Rules of Criminal Procedure. We decline to rewrite the Rules of Criminal Procedure by sanctioning the incorporation of the relation-back doctrine into those rules when nothing of that nature presently appears in them.

*1055 "To the extent that the following cases applied the relation-back doctrine to proceedings governed by Rule 32, Ala. R.Crim.P., we overrule those cases; Harris v. State, [Ms. CR-01-1748, October 29, 2004] ___ So.2d ___ (Ala.Crim. App.2004); McWilliams v. State, 897 So.2d 437 (Ala.Crim.App.2004); Giles v. State, 906 So.2d 963 (Ala.Crim.App. 2004); Ex parte Mack, 894 So.2d 764 (Ala.Crim.App.2003); DeBruce v. State, 890 So.2d 1068 (Ala.Crim.App.2003); Charest v. State, 854 So.2d 1102 (Ala. Crim.App.2002); and Garrett v. State, 644 So.2d 977 (Ala.Crim.App.1994)."
___ So.2d at ___.
However, the circuit court, when ruling on the ineffective-assistance-of-counsel claims it concluded were time-barred, also gave alternative grounds for denying relief. As previously stated, this Court may affirm a circuit court's denial of a Rule 32 petition if it is correct for any reason. See Reed v. State, 748 So.2d 231 (Ala.Crim. App.1999). For example; Hunt's petition states the following concerning his claim that trial counsel's performance was ineffective because counsel failed to object to the State's use of prejudicial photographs:
"Trial counsel failed to object when the father of the victim, Mr. W.O. Sanders, was seated next to the District Attorney at the commencement of jury selection and during the opening arguments. His presence at the table likely inflamed the passions and prejudices of the jury by improperly suggesting that the prosecuting attorney represented the victims' family and served only to garner sympathy for the victim's family and, therefore, for the prosecution. As such, Mr. Hunt was denied a fair trial and due process."
(C.R. 237.)
The circuit court stated the following in its order denying relief on this claim:
"The Court finds that the allegations in Part II.A.(xii) of Hunt's amended petition are time-barred; therefore, they are denied. See, Charest v. State, [854 So.2d 1102] (Ala.Crim.App.2002).
"In the alternative, Hunt presented no evidence at his evidentiary hearing that would establish trial counsel's failure to object caused him to be prejudiced. `Prejudice cannot merely be alleged; it must be affirmatively proved.' Williams v. State, 783 So.2d 108, 119 (Ala.Crim.App.2000). The Court finds that Hunt `has not met [his] the burden [of proof] imposed by Rule 32.3, [ARCrP]'. Boyd v. State, 746 So.2d at 385. The Court finds that Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudiced. The allegation in Part II.A.(xii) of Hunt's petition is hereby denied by the Court."
(C.R. 817-18.)
The circuit court's finding that Hunt failed to meet his burden of proof in regard to this claim is supported by the record. At the Rule 32 evidentiary hearing, Hunt presented little evidence in support of his numerous claims of ineffective assistance of counsel. No witnesses testified at the Rule 32 hearing, and little demonstrative evidence was introduced.[8] At the evidentiary hearing counsel read portions of his amended Rule 32 petition to the circuit court. Hunt made no attempt to satisfy his burden of proof under Rule 32.3, Ala.R.Crim.P., or to satisfy the requirements set out by the United States *1056 Supreme Court in Strickland.[9]

IV.
Hunt argues that the circuit court applied the wrong standard of review when evaluating his ineffective-assistance-of-counsel claims because, he argues, the circuit court erroneously held that he was required to prove prejudice. He argues, citing Ex parte Pierce, 851 So.2d 618 (Ala. 2002), that prejudice is most often inferred from the circumstances of a case.
The United States Supreme Court, in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), a decision released the same day as Strickland, recognized certain exceptions to the prejudice requirement. The Supreme Court of Mississippi aptly stated the following concerning the Supreme Court's holding in Cronic:
"The Supreme Court has recognized a limited exception to the prejudice requirement when (1) assistance of counsel has been denied completely, (2) `counsel entirely fails to subject the prosecution's case to meaningful adversarial testing,' or (3) counsel is denied during a critical stage of the proceedings. Cronic 466 U.S. at 658-59, 104 S.Ct. 2039; see Mickens v. Taylor, 535 U.S. 162, 122 S.Ct. 1237, 1240-41, 152 L.Ed.2d 291 (2002). Freeman v. Graves, 317 F.3d [898] at 900 [(8th Cir.2003)]. In this case, because the errors were committed by his own counsel, Branch argues that there was no meaningful adversarial testing of prosecutor's case. Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002) (discussing egregious trial conduct necessary to remove a case from Strickland analysis and apply a Cronic analysis).
"When applying Strickland or Cronic, the distinction between counsel's failure to oppose the prosecution entirely and the failure of counsel to do so at specific points during the trial is a `difference . . . not of degree but of kind.' [Bell, 122 S.Ct. at 1851 (quoting Cronic, 466 U.S. at 659, 104 S.Ct.2039)]. Under this rationale, when counsel fails to oppose the prosecution's case at specific points or concedes certain elements of a case to focus on others, he has made a tactical decision. Id. at 1851-52. By making such choices, defense counsel has not abandoned his or her client by entirely failing to challenge the prosecution's case. Such strategic decisions do not result in an abandonment of counsel, as when an attorney completely fails to challenge the prosecution's case. Under the Court's reasoning, then, Cronic is reserved only for those extreme cases in which counsel fails to present any defense. We presume prejudice in such cases because it is as if the defendant had no representation at all. In contrast, strategic or tactical decisions are evaluated under Strickland's traditional two-pronged test for deficiency and prejudice."
Branch v. State, 882 So.2d 36, 65-66 (Miss. 2004).
Alabama has recognized few instances where the prejudice prong of the Strickland analysis is presumed without proof. See Ex parte Yelder, 575 So.2d 137 (Ala.1991) (prejudice presumed when counsel fails to make a Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), objection); Byrdsong v. State, 822 So.2d 470 (Ala.Crim.App.2000) (prejudice presumed if counsel had an actual conflict *1057 of interest); Ex parte Dunn, 514 So.2d 1300 (Ala.1987) (prejudice presumed in counsel's failure to file brief on direct appeal). Cf. Dobyne v. State, 805 So.2d 733 (Ala.Crim.App.2000) (this Court will not presume prejudice in failure to object to discrimination in the selection of grand jury foreperson).
Hunt relies on the Alabama Supreme Court's opinion in Ex parte Pierce, 851 So.2d 618 (Ala.2002), to support his assertion that "prejudice is most often inferred from the circumstances." Hunt's brief at page 42. In Pierce, the Alabama Supreme Court held that counsel's performance was deficient for failing to object to the fact that a sheriff's deputy who had close and continual contact with the jury was also a key state witness. The Pierce Court, quoting the United States Supreme Court's decision in Turner v. Louisiana, 379 U.S. 466, 473, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), stated "`"it would be blinking reality not to recognize the extreme prejudice inherent in [the] continual association throughout the trial between the jurors and . . . key witnesses for the prosecution."'" 851 So.2d at 620-21 (quoting Ex parte Pierce, 851 So.2d 606, 611 (Ala. 2000)). The holding in Pierce is narrow and has no application to the issues presented in this case. The circuit court correctly applied the standard set out in Strickland and required the petitioner to prove that he was prejudiced in order to succeed on his ineffective assistance of counsel claims.

V.
Hunt argues that the circuit court erred in finding that some of his constitutional claims were procedurally barred because they could have been raised at trial or on appeal. Specifically, he argues that the procedural default rules in Rule 32, Ala.R.Crim.P., do not exclude claims that raise a jurisdictional defect and that the Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), claim, he argues, raises a jurisdictional issue. The circuit court stated the following:
"Ring [v. Arizona, 536 U.S. 584 (2002),] is not retroactive to cases that are beyond the direct appeal stage. . . . The Alabama Court of Criminal Appeals has repeatedly held that `Apprendi does not apply retroactively to cases on collateral review.' Sanders v. State, 815 So.2d 590, 591 (Ala.Crim.App.2001). . . . Likewise, the Eleventh Circuit Court of Appeals has held that Apprendi does not apply retroactively to cases on collateral review."
(C.R. 120.) The circuit court correctly denied relief on this ground. As we stated in Brooks v. State, 929 So.2d 491 (Ala.Crim. App.2005):
"[T]he Supreme Court's decision in Ring [v. Arizona, 536 U.S. 584 (2002),] does not apply retroactively to cases on collateral review. See McWilliams v. State, 897 So.2d 437 (Ala.Crim.App. 2004). The United States Supreme Court in Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519 (2004), specifically held that its decision in Ring did not apply to death cases that were already final at the time that the decision was announced."
Hunt's case was final in May 1995, when this Court issued the certificate of judgment.
Moreover, the jury convicted Hunt of murdering Karen Lane during the course of a burglary. The felony that elevated the murder to capital murder and made Hunt eligible for the death penalty was submitted to the jury and proven beyond a reasonable doubt in the guilt phase. There was no Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), violation. See Ex parte Waldrop, 859 So.2d 1181 (Ala.2002), cert. denied, 540 *1058 U.S. 968, 124 S.Ct. 430, 157 L.Ed.2d 314 (2003).
Hunt also argues that the circuit court erroneously found that his Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claim was barred.
However, the circuit court found that Hunt's Brady claim was precluded because Hunt failed to plead or to prove that this claim was based on newly discovered evidence. The circuit court's ruling is consistent with prior holdings of this Court. As we stated in Williams v. State, 782 So.2d 811, 818 (Ala.Crim.App.2000):
"The appellant's first argument is that the State withheld exculpatory information in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). . . . The appellant did not assert that this claim was based on newly discovered evidence. Therefore, it is procedurally barred because he could have raised it at trial and on direct appeal, but did not. See Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P.; Boyd v. State, 746 So.2d 364 (Ala.Cr.App.1999); Matthews v. State, 654 So.2d 66 (Ala.Cr.App. 1994); Lundy v. State, 568 So.2d 399 (Ala.Cr.App.1990)."
Hunt made no assertions in his Rule 32 petition or at the evidentiary hearing that his Brady claim was based on newly discovered evidence. See Rule 32.1(e), Ala. R.Crim.P.
The circuit court also correctly found that many of Hunt's claims were procedurally barred because they could have been, but were not, raised at trial or on appeal. We have repeatedly held that the procedural default grounds contained in Rule 32 apply to all cases, even to those in which the death penalty has been imposed. See Brownlee v. State, 666 So.2d 91 (Ala.Crim. App.1995); State v. Tarver, 629 So.2d 14 (Ala.Crim.App.1993). We note that our neighbor, the State of Mississippi, likewise applies the procedural default grounds for collateral proceedings to death-penalty cases. See Wilcher v. State, 863 So.2d 776 (Miss.2003), cert. denied, 542 U.S. 942, 124 S.Ct. 2917, 159 L.Ed.2d 821 (2004).

VI.
Hunt argues that the circuit court erred in failing to find that his counsel's performance at the guilt phase of his trial was ineffective. He asserts numerous grounds in support of this contention. We will address each claim individually.
To prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy the standard announced by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must show that: (1) counsel's performance was deficient, and (2) he was prejudiced as a result of the deficient performance.
"`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; *1059 that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
"466 U.S. at 689 (citations omitted). As the United States Supreme Court further stated:
"`[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'
"466 U.S. at 690-91. `An accused is entitled "`not [to] errorless counsel, and not [to] counsel judged ineffective by hindsight, but [to] counsel reasonably likely to render and rendering reasonably effective assistance.'"' Bui v. State, 717 So.2d 6, 27 (Ala.Crim.App. 1997), quoting Thompson v. State, 615 So.2d 129, 134 (Ala.Crim.App.1992), quoting in turn Haggard v. Alabama, 550 F.2d 1019, 1022 (5th Cir.1977)."
Adkins v. State, 930 So.2d 524, 534-35 (Ala.Crim.App.2001) (opinion on return to third remand).
"The Supreme Court has instructed that there is `a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' Strickland, 104 S.Ct. at 2065. This presumption is like the `presumption of innocence' in a criminal trial, in which `the defendant is not required to come forward with proof of his innocence once evidence of guilt is introduced to avoid a directed verdict of guilty.' Black's Law Dictionary 823 (6th ed.1991). This presumption of competence must be disproved by a petitioner. Petitioner continually bears the burden of persuasion on the constitutional issue of competence and further, (adding the prejudice element) on the issue of ineffective assistance of counsel. See Strickland, 104 S.Ct. at 2064 (stating that `defendant must show that counsel's performance was deficient' and that defendant must also show prejudice). Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the petitioner."
Chandler v. United States, 218 F.3d 1305, 1314 n. 15 (11th Cir.2000), cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001). "`"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between,"' . . . and `[c]ases in which deliberate strategic decisions have been found to constitute ineffective assistance are even fewer and farther between.'" Williams v. Head, 185 F.3d 1223, 1227 (11th Cir.1999), quoting Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995), and Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir.1994).
Hunt was represented at trial by attorneys Hubert Taylor and Louis Wilkinson. Both attorneys were deceased at the time of the Rule 32 proceeding. We have *1060 conducted a diligent search and can find no case where the death of a petitioner's trial counsel before a postconviction hearing relieved the petitioner of complying with the requirements of Strickland. See Fults v. State, 274 Ga. 82, 548 S.E.2d 315 (2001), cert. denied, 535 U.S. 908, 122 S.Ct. 1210, 152 L.Ed.2d 148 (2002) (court applied Strickland after noting that attorney was deceased); King v. State, 808 So.2d 1237 (Fla.2002) (court applied test in Strickland although attorney was deceased and could not testify); Hauck v. Mills, 941 F.Supp. 683 (M.D.Tenn.1996) (court applied Strickland to claims of ineffective assistance of counsel even though attorney was deceased). In fact, some courts have noted that "the fact that a petitioner's trial counsel is deceased may in fact prejudice the Government's ability to respond to the petitioner's claims" and those courts have dismissed habeas corpus actions raising ineffective assistance of counsel claims. Slevin v. United States, 71 F.Supp.2d 348, 358 n. 9 (S.D.N.Y.1999), citing Honeycutt v. Ward, 612 F.2d 36, 41-43 (2d Cir.1979).
"In several cases, courts have failed to find that a prisoner sustained the burden of proof on a claim of ineffective counsel raised in connection with a guilty plea when the prisoner could only offer his uncorroborated testimony as to actions of his attorney and the attorney was deceased."
United States v. McFarlane, 881 F.Supp. 562, 569 (M.D.Fla.1995).
Therefore, we apply the standard of review set out by the United States Supreme Court in Strickland to the claims of ineffective assistance of counsel presented in this case.

A.
Hunt first argues that Alabama's statutory scheme for compensating attorneys who represent indigents, § 15-12-21(d), Ala.Code 1975,[10] denied him the effective assistance of counsel. Hunt's Rule 32 petition states the following concerning this claim:
"Mr. Hunt was denied the effective assistance of counsel at trial in part because the State of Alabama provides insufficient funding for the compensation of capital defense attorneys. Alabama Code section 15-12-21 (1975) provided, at the time of Mr. Hunt's trial, that court-appointed attorneys trying capital cases could be compensated no more than $1,000 for out-of-court work for each phase of the capital trial, based on a rate of $20 per hour. Accordingly, an attorney appointed to a capital case received no compensation whatever beyond fifty hours of out-of-court work.
"The compensation limitations violated the separation of powers doctrine, constituted a taking without just compensation, deprived indigent capital defendants of the effective assistance of counsel, and violated the Equal Protection Clause. . . .
"The failure to provide adequate funding to court-appointed counsel tends inevitably to curtail the fundamental right to the effective assistance of counsel. The failure adequately to compensate the attorneys in Mr. Hunt's case was particularly debilitating given the unique circumstances and issues involved. Indeed, the unreasonable limit on counsel compensation was a cause of Mr. Hunt's counsel's deficient performance."
*1061 (C.R. 228-29; citations omitted.) Hunt presented no evidence in support of this claim at the evidentiary hearing.
This Court in Bui v. State, 717 So.2d 6 (Ala.Crim.App.1997), specifically rejected the same claim as Hunt now makes. In Bui, we stated:
"[W]e reject the notion that Alabama's statutory scheme for compensating attorneys in capital cases, in and of itself, denies a defendant effective representation. Although the burden of pleading and proof is on the appellant, Rules 32.3 and 32.6(b), Ala.R.Crim.P., he alleged no facts in his petition and presented no evidence at the hearing to support his claim that the compensation scheme in § 15-12-21(d) caused is counsel's performance to fall `outside the wide range of professionally competent assistance.' Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. Because the appellant has now shown `by a preponderance of the evidence the facts necessary to entitle [him] to relief,' Rule 32.3, we find no merit in his claim."
717 So.2d at 15-16 (footnote omitted). The circuit court correctly denied relief on this claim.

B.
Hunt argues that counsel failed to investigate and prepare for trial. Specifically, Hunt argues that counsel failed to visit the crime scene, failed to interview certain witnesses, and failed to prepare Hunt's mother to testify.[11]
The circuit court stated the following concerning this claim:
"The Court of Criminal Appeals has held that:
"`Claims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result.'
"Thomas v. State, 766 So.2d 860, 892 (Ala.Crim.App.1998), citing, Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993). Hunts fails to plead in his amended petition what beneficial information trial counsel could have discovered from viewing the crime scene or interviewing the named witnesses. Hunt also fails to plead any facts in his amended petition indicating how trial counsel's preparation of his mother was deficient or what additional information trial counsel could have elicited from her at trial. . . .
"In the alternative, Hunt presented no evidence at his evidentiary hearing that would establish that he was prejudiced because trial counsel did not visit the crime scene or interview other witnesses, including Hunt's mother. `Prejudice cannot merely be alleged; it must be affirmatively proved.' Williams v. State, 783 So.2d 108, 119 (Ala.Crim.App. 2000). The Court finds that Hunt `has not met [his] burden [of proof] imposed by rule 32.3, [ARCrP]'. Boyd v. State, 746 So.2d at 385."
(C.R. 806-07.)
Hunt introduced at the Rule 32 proceedings Louis Wilkinson's attorney-fee declaration. Wilkinson billed the state for 80 hours of in-court time and for 45 hours of out-of-court time. Taylor's fee declaration was not introduced.
In support of this claim of ineffective assistance of counsel Hunt relied exclusively on the fact that Wilkinson's fee declaration showed that he worked 45 hours out-of-court on the case and that his itemization contained no indication that he interviewed *1062 any witnesses. However, what Hunt fails to consider is that before trial Hunt's attorneys obtained the services of private investigators Jim Bentley and Jean Isaacs. Taylor submitted the investigators' bill to the circuit court. The total bill detailed 138 hours of investigator time and 38 hours of travel time. The bill also showed that the investigators obtained statements from 12 witnesses. Neither of the investigators was called to testify at the Rule 32 hearing.
At the time of Hunt's trial the amount attorneys representing indigents could collect was capped by statute. It is this Court's experience that when statutory limitations are imposed on the amount that an attorney may bill, many attorneys will cease itemizing their work when they have reached the statutory limit. A petitioner cannot satisfy the requirements of Strickland by merely submitting a copy of a bill for services submitted by one of his two trial attorneys. Because Hunt presented no other evidence to support this claim, we hold that Hunt failed to meet his burden of proving that counsel was ineffective for failing to investigate. See Rule 32.3, Ala.R.Crim.P.
Moreover, we have reviewed the transcript of the trial proceedings and see no evidence that counsel was unprepared. Indeed, the opposite is true. The record shows that counsel put on a vigorous defense, thoroughly challenging the State's evidence, even though the evidence against Hunt was both overwhelming and horrific. Hunt failed to satisfy the Strickland test and relief was properly denied on this claim.

C.
Hunt argues that counsel was ineffective for failing to adequately argue for a change of venue based on pretrial publicity. Hunt asserts that counsel failed to introduce at trial any of the numerous newspaper articles written about the case; therefore, his actions were ineffective in this regard.
The circuit court made the following findings on this claim:
"The allegations in part II.A.(vii) of Hunt's amended petition are no more specific than the allegations in Hunt's original petition. Hunt fails to identify any juror by name or indicate how their alleged pre-trial knowledge of the facts of his case had any effect on the outcome of his trial.
"At his evidentiary hearing, Hunt submitted newspaper articles in an attempt to support his allegation that trial counsel was ineffective for failing to secure a change of venue. After reviewing the newspaper articles, the Court finds that they were either factual in nature or were published after Hunts's trial and, thus, would not have supported a change of venue. See Hammonds v. State, 777 So.2d 750, 769-770 (Ala.Crim.App.1999). Hunt failed to prove that any juror that sat on his petit jury was adversely effected by pre-trial publicity. `Prejudice cannot merely be alleged; it must be affirmatively proved.' Williams v. State, 783 So.2d 108, 119 (Ala.Crim.App. 2000). The Court finds that Hunt `has not met [his] burden [of proof] imposed by Rule 32.3, [ARCrP].' Boyd v. State, 746 So.2d at 385. The Court finds that Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudiced. The allegation in Part II.A.(vii) of Hunt's petition is hereby denied by the Court."
(C.R. 812-13.)
To support his assertion, Hunt introduced and admitted at the evidentiary hearing copies of 25 newspaper articles. Some of the articles were published after *1063 Hunt's trial. Hunt offered no other evidence to support this claim. "It is well established in Alabama . . . that the existence of pretrial publicity, even if extensive, does not in and of itself constitute a ground for changing venue. . . ." Ex parte Fowler, 574 So.2d 745, 747 (Ala.1990). Hunt made no attempt to introduce the voir dire examination of the prospective jurors nor any statements from any jurors. Hunt failed to meet his burden of proof in regard to this claim.

D.
Hunt argues that his counsel failed to adequately request that the State disclose exculpatory evidence and impeachment evidence. Specifically, he argues that counsel failed to obtain a copy of a statement by Stephen Cain, a State's witness.
The record shows that Stephen Cain was a trustee at the Walker County jail when Hunt was incarcerated there awaiting trial. A copy of a statement purportedly made by Cain to a sheriff's deputy was introduced at the Rule 32 hearing. The statement details a conversation Stephen Cain had with Jimmy Cain, another inmate at Walker County jail. Stephen Cain said that Jimmy Cain told him that the police wanted Jimmy to testify against Hunt because Hunt had told Jimmy Cain that he killed Karen Lane. No witnesses were called to verify the contents of this statement.
This claim was not addressed in the circuit court's order. However, the only evidence introduced in support of this claim was the statement purportedly made by Stephen Cain, which was not authenticated. Hunt did not call Stephen Cain or Jimmy Cain to testify. Also, the itemized bill from the private investigators showed that the investigators had spoken with and obtained a statement from Stephen Cain.
As Hunt presented no lawful evidence in support of this claim, we hold that Hunt failed to meet his burden of proof. See Rule 32.3, Ala.R.Crim.P.

E.
Hunt argues that counsel's voir dire examination of the prospective jurors was inadequate because, he argues, counsel did not "life qualify" the prospective jurors.[12] Hunt made the following claim in his Rule 32 petition:
"Trial counsel failed to conduct sufficient and adequate voir dire to ensure that an impartial jury would be impaneled. Voir dire requires sufficient latitude for the intelligent exercise by an accused of his peremptory challenges. . . . At least ten prospective jurors were exposed to prejudicial media coverage of Mr. Hunt's case and several more had extensive personal knowledge of the facts. By asking limited and leading questions, trial counsel failed to elicit anything but conclusory statements from the veniremembers about their abilities to lay aside their opinions formed from pretrial publicity or prior knowledge of the case. Mere assertions by jurors that they can be impartial are inadequate to establish that they can in fact be impartial. . . . Counsel's failure to conduct an adequate voir dire deprived Mr. Hunt of his rights to a fair trial by an impartial jury."
(C.R. 236.)
The Alabama Supreme Court held in Ex parte Brown, 686 So.2d 409 (Ala.1996), that the failure to life qualify prospective *1064 jurors does not constitute plain error if no prospective juror expressed strong views in favor of the death penalty. Hunt presented no evidence as to any responses offered by prospective jurors during voir dire. Hunt failed to meet his burden of proof.

F.
Hunt argues that trial counsel failed to object to certain instances of prosecutorial misconduct. Specifically, he argues that the prosecutor vouched for State witnesses, injected his own opinions into the proceedings, and commented on facts not in evidence.
The underlying substantive issues were addressed by this Court in our opinion on direct appeal. In each instance we found no error. Because we found no merit to the substantive issue, Hunt cannot satisfy the Strickland test. As this Court stated in Coral v. State, 900 So.2d 1274, 1287 (Ala.Crim.App.2004):
"The substantive claim was addressed by the Alabama Supreme Court on direct appeal and determined adversely to Coral. . . . Therefore, Coral can show no prejudice. The circuit court correctly denied relief on this claim."
Moreover, although we do not have the benefit of trial counsel's testimony because both attorneys are now deceased, this Court has repeatedly held that whether, and when, to object is a matter of trial strategy. As we stated in Moore v. State, 659 So.2d 205, 209 (Ala.Crim.App. 1994):
"Objections are a matter of trial strategy, and an appellant must overcome the presumption that `counsel's conduct falls within the wide range of reasonable professional assistance,' that is, the presumption that the challenged action `might be considered sound trial strategy.' Strickland, 466 U.S. at 687-88, 104 S.Ct. at 2064, 80 L.Ed.2d at 693 (1984). Again, the appellant has not shown how she was prejudiced by trial counsel's failure to make objections."

G.
Hunt also argues that counsel was ineffective in failing to adequately cross-examine James Sanders, a State's witness.[13] Though the circuit court erroneously found that this claim was time-barred because it was not raised in Hunt's timely filed petition, the circuit court also gave alternative reasons for denying relief.
The circuit court made the following findings:
"In the alternative, Hunt did not call either Loretta Martin or James Sanders to testify at his evidentiary hearing. The Court allowed Hunt, over the State's objection, to introduce documents concerning Sanders criminal history. At trial Sanders testified that he had prior felony convictions for receiving stolen property and robbery and, at the time of trial, was in jail for theft. Sanders also indicated that his testimony against Hunt was not the result of any deal with the State for help on his pending *1065 charges. Trial counsel vigorously cross-examined Sanders about his criminal record and his possible motives for testifying against Hunt. Hunt presented no evidence at his evidentiary hearing that trial counsel could have used to further impeach the testimony of Loretta Martin or James Carr Sanders. `Prejudice cannot merely be alleged; it must be affirmatively proved.' Williams v. State, 783 So.2d 108, 119 (Ala.Crim.App.2000). The Court find that Hunt `has not met [his] burden [of proof] imposed by Rule 32.3, [ARCrP]'. Boyd v. State, 746 So.2d at 385. The Court finds that Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudiced."
(C.R. 844-45.)[14]
"`[D]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature.' United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.1987), cert. denied, 484 U.S. 1061, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988); accord Eze v. Senkowski, 321 F.3d 110, 127 (2d Cir. 2003) (`"The conduct of examination and cross-examination is entrusted to the judgment of the lawyer. . . .'" (quoting United States v. Luciano, 158 F.3d 655, 660 (2d Cir.1998))); see also United States v. Eisen, 974 F.2d 246, 265 (2d Cir.1992) (no ineffective assistance based on failure to adequately impeach government witnesses where defense counsel vigorously cross-examined witnesses and could have reasonably concluded that further questioning on relatively unimportant matters would confuse or fatigue the jury), cert. denied, 507 U.S. 1029, 113 S.Ct. 1840, 123 L.Ed.2d 467 (1993)."
Rosario-Dominguez v. United States, 353 F.Supp.2d 500, 515-16 (S.D.N.Y.2005). Hunt failed to satisfy the Strickland test in regard to this claim.

H.
Hunt argues that trial counsel failed to object to the circuit court's instructions on reasonable doubt. In his brief to this Court, Hunt asserts that the circuit court's instruction violated the United States Supreme Court's holding in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), because, he argues, it diminished the State's burden of proof.
In its order, the circuit court stated the following:
"Hunt alleges that the Court's definition of reasonable doubt violated the principles set forth in Cage v. Louisiana, 498 U.S. 39 (1990) and In re Winship, 397 U.S. 358 (1970). In Lawhorn v. State, 756 So.2d 971 (Ala.Crim.App. 1999), the Court of Criminal Appeals reviewed similar language in the trial court's instruction that Hunt contends is improper. The Court of Criminal Appeals held that:
"`While the trial court used the terms `actual substantial doubt' and `moral certainty' in its instructions, id did not also use the term `grave uncertainty' in defining reasonable doubt. It was the use of all three terms that the Supreme Court found unconstitutional in Cage. This court has held that use of some, but not all, of the terms examined in Cage does not necessarily constitute reversible error.
"`In a recent revisitation of Cage, the United States Supreme Court held that, while it did not condone the *1066 use of the Cage terminology in reasonable doubt instructions, the use of such terminology does not automatically render instructions unconstitutional if `take as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury.' Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), quoting Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954).
"Lawhorn v. State, 756 So.2d at 985.
"The Court's definition of reasonable doubt given to the jury, taken as a whole, did not violate the principles of Cage. The Court finds that the allegation in Hunt's second amended petition attacking the Court's definition of reasonable doubt to be without merit. Thus, Hunt has failed to state a claim of ineffective assistance of counsel or establish that a material issue of fact or law exist that would entitle him to relief as required by Rule 32.7(d), [Ala.R.Crim.P.]. The Court finds that this allegation is without merit; therefore, it is hereby denied."
(C.R. 850-51.) The circuit court's findings are correct and supported by caselaw. Relief was correctly denied on this claim.

I.
Hunt argues that counsel was ineffective for failing to request an instruction on intoxication. The circuit court erroneously found that this claim was time-barred because it was not raised in Hunt's timely Rule 32 petition.
However, this Court on direct appeal found no plain error in the trial court's failure to instruct the jury on intoxication. We stated:
"[I]n the instant case, the matter of an intoxication charge was not raised by anyone at the guilt phase of the trial. In fact, defense counsel objected to the references during the trial to the appellant's drug use and, in addition to the appellant's defense that he did not commit the murder, defense counsel suggested during closing argument that, at most, the evidence supported a conviction of intentional murder only. Thus, it appears that the appellant's defense strategy was to convince the jury either that he did not commit the murder or that the killing was intentionally done, but without sexual overtones. There was no claim that he was unable to form the intent to kill because he was intoxicated. Where, as in this case, an intoxication instruction would conflict with defense strategy, there is no plain error in the trial court's failure to give such an instruction. Gurley v. State, 639 So.2d 557, 560-61 (Ala.Cr.App.1993)."
Hunt, 659 So.2d at 958.
We have examined the transcript of Hunt's trial. It appears that counsel's defense at the guilt phase was to attack the State's case by establishing a reasonable doubt. In closing argument Taylor attacked the State's witness who placed Hunt at Cook's apartment around the time of the murder by arguing that Turner had changed her story. Moreover, he argued (1) that the eight or nine fingerprints discovered near the body did not match Hunt's fingerprints so someone else had to have been there; (2) that the numerous hairs discovered at the crime scene did not match Hunt's hair; (3) that Hunt had no scars and bruises, which was inconsistent with a struggle; and (4) that a pair of bloody men's underwear that was discovered at the murder scene was never identified as Hunt's. Finally, counsel attacked the credibility of Hunt's sister because she changed her story and also attacked the credibility of the jail-house informant. Wilkinson in his closing argument pointed *1067 out that experts had testified that the broom handle had mucus on the end, but he argued that the mucus could have been from the victim's mouth or nose. He further argued that because there was no trauma to the victim's vagina the murder was not sexually motivated. Both attorneys vigorously attacked the State's evidence hoping to establish a reasonable doubt for the jury.
Here, an intoxication instruction would have been inconsistent with counsel's defense strategy. "[T]he mere existence of a potential alternative defense theory is not enough to establish ineffective assistance based on counsel's failure to present that theory." Rosario-Dominguez v. United States, 353 F.Supp.2d at 513. We cannot say that counsel's performance is deficient for failing to request a jury instruction on intoxication when such an instruction would have been inconsistent with counsel's defense. See Commonwealth v. Doucette, 391 Mass. 443, 458, 462 N.E.2d 1084 (1984). The circuit court correctly denied relief on this claim.

J.
Hunt argues that counsel was ineffective for failing to object to the sufficiency of the evidence presented at trial. Specifically, Hunt argues that counsel did not object to the sufficiency of the evidence to support the offense of sexual abusethe underlying crime for the burglary charge.
The circuit court stated the following:
"This Court presided at Hunt's trial and finds that the evidence of Hunt's guilt was overwhelming. Further, on direct appeal the Court of Criminal Appeals found that the evidence supporting Hunt's conviction was not only legally sufficient, but `was, in fact, overwhelming.' Hunt v. State, 659 So.2d at 941."
(C.R. 858.) We agree with the circuit court.
Moreover, we have reviewed the record of the trial proceedings. Our review of the record shows that counsel made the following objection:
"[Defense counsel]: We move to dismiss Count III of the indictment on the grounds that the charges allege felony[,] and sexual abuse in the second degree is a misdemeanor.
"We except to any charge on the offense of sexual abuse on the grounds there is no evidence of sexual abuse in the meaning of the capital murder statute.
"We, also except to any charge on sexual abuse on the ground that sexual abuse in the second degree is not sufficient to trigger the capital murder statute.
"We except, also, to any charge on the charge of burglary on the ground that there is no evidence of a burglary."
(R. 898-99.) Hunt is due no relief on this claim.

VII.
Hunt argues that the circuit court erred in concluding that his counsel's performance at the penalty phase of his capital trial was not deficient.
"When claims of ineffective assistance of counsel involve the penalty phase of a capital murder trial the focus is on `"whether `the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'"' Jones v. State, 753 So.2d 1174, 1197 (Ala.Crim.App. 1999), quoting Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir.1992). See also Williams v. State, 783 So.2d 108 (Ala. Crim.App.2000). An attorney's performance is not per se ineffective for failing to present mitigating evidence at the penalty phase of a capital trial. See State v. Rizzo, 266 Conn. 171, 833 A.2d *1068 363 (2003); Howard v. State, 853 So.2d 781 (Miss.2003), cert. denied, 540 U.S. 1197 (2004); Battenfield v. State, 953 P.2d 1123 (Okla.Crim.App.1998); Conner v. Anderson, 259 F.Supp.2d 741 (S.D.Ind.2003); Smith v. Cockrell, 311 F.3d 661 (5th Cir.2002); Duckett v. Mullin, 306 F.3d 982 (10th Cir.2002), cert. denied, 123 S.Ct. 1911 (2003); Hayes v. Woodford, 301 F.3d 1054 (9th Cir.2002); and Hunt v. Lee, 291 F.3d 284 (4th Cir.), cert. denied, 537 U.S. 1045 (2002)."
Adkins v. State, 930 So.2d 524, 536 (Ala. Crim.App.2001) (opinion on return to third remand). As we also stated in McWilliams v. State, 897 So.2d 437, 453-54 (Ala. Crim.App.2004):
"`Prejudicial ineffective assistance of counsel under Strickland cannot be established on the general claim that additional witnesses should have been called in mitigation. See Briley v. Bass, 750 F.2d 1238, 1248 (4th Cir.1984); see also Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir.1990). Rather, the deciding factor is whether additional witnesses would have made any difference in the mitigation phase of the trial.' Smith v. Anderson, 104 F.Supp.2d 773, 809 (S.D.Ohio 2000), aff'd, 348 F.3d 177 (6th Cir.2003). `There has never been a case where additional witnesses could not have been called.' State v. Tarver, 629 So.2d 14, 21 (Ala.Crim.App.1993)."
The record in this case reflects that Hunt filed the original Rule 32 petition pro se. Counsel had been appointed for Hunt. Acting pro se Hunt filed several motions requesting that the circuit court not entertain any claims related to ineffective assistance of counsel at the penalty phase of his capital trial. In a motion to dismiss stamped as filed in the circuit clerk's office on January 10, 2001, Hunt states the following:
"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of difference to counsel's judgments.
"In the instant case counsel for the defendant did an exhaustive background check and after discussions between counsel and defendant the decision, a strategic decision, was made by both counsel and defendant that to present testimony at a sentence hearing would be fruitless and even harmful, and [a] decision was made not to present testimony.

"1) Harmful because any testimony would [have] bolstered the theory of the state
"2) There is no prejudice because even if there existed mitigating evidence, no amount presented could hurdle over the aggravating factor of heinous, atrocious [or] cruel."
(C.R. 137; emphasis added). The motion is signed by Gregory Hunt.
The record also shows that before the evidentiary hearing on the Rule 32 petition, the circuit court discussed the motions filed by Hunt pro se and the following occurred:
"[Assistant attorney general]: If you recall, Judge, with our last status conference, Mr. Hunt had indicated to the Court that he wished all the penalty phase issues of ineffective assistance be dismissed. And we would ask the Court to colloquy Mr. Hunt and see if that's still his desire. If it is, we would ask that any and all ineffectiveness claims concerning the penalty phase be dismissed at this time, Your Honor, before we move on.
"The Court: Mr. Levine [defense counsel]?

*1069 "[Defense counsel]: Your Honor, I would oppose, obviously, I oppose the prosecuting general's motion. I think that one, it would be inappropriate for your Honor to colloquy my client directly, because he is represented by counsel. . . .
". . . .
"[Hunt]: And I want to stand adamant about my desire not to challenge the penalty phase issues.
"The Court: You do not want to challenge the penalty phase issues?
"[Hunt]: Right."
(R. 66-68.) Hunt's statements are not disputed because both of his trial attorneys were deceased at the time of the Rule 32 proceedings.
Hunt argues that counsel was ineffective for failing to investigate mitigating evidence. He argues in his brief to this Court that he demonstrated at the Rule 32 proceeding that his trial counsel's failure to conduct an investigation was complete. He asserts that he presented pages of possible mitigating evidence that could have been but was not presented at trial.
However, what Hunt fails to consider is that the majority of the alleged mitigating evidence was only pleaded in his Rule 32 petition. As this Court stated in Boyd v. State, 913 So.2d 1113, 1125 (Ala.Crim.App.2003):
"`Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.' Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion `which, if true, entitle[s] the petitioner to relief.' Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App. 1993). It is the allegation of facts in pleading which, if true, entitles a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving those alleged facts."
Here, Hunt argues that there were numerous witnesses, Hunt's siblings, who could have testified about Hunt's violent and abusive father and his troubled childhood. However, Hunt never presented any witnesses at the Rule 32 hearing to support theses allegations. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn.Crim.App.1990). When the petitioner alleges that mitigating evidence should have been presented at the penalty phase, he has the burden of proving that such mitigating evidence does in fact exist. See Narvaiz v. State, 840 S.W.2d 415, 434 (Tex.Crim.App.1992).
The record does reflect that counsel introduced some of Hunt's school records at the evidentiary hearing to support his assertion that Hunt had "low cognitive functioning." We have reviewed the records. The majority of those records show that Hunt was an average student who made several Ds over the course of his school years. On the back of his 6th grade report card the teacher made the following comment: "Greg can do well when he feels he needs to. He needs to be pushed at times." The presentence report stated that Hunt completed the 10th grade and he reported that he had obtained his general educational development ("GED") certificate. There is no indication in the records submitted by Hunt to indicate that Hunt had "low cognitive functioning."[15] *1070 Therefore, Hunt failed to prove that the alleged excluded mitigating evidence would have affected the outcome at the penalty phase.
Hunt also makes several other arguments concerning his counsel's performance at the penalty phase. However, Hunt presented absolutely no evidence at the Rule 32 hearing in support of these claims; therefore, he failed to meet his burden of proof. Rule 32.3, Ala.R.Crim.P.
Last, the United States Supreme Court in Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), when reviewing a claim of ineffective assistance of counsel at the penalty phase of a capital trial stated:
"In Strickland [v. Washington, 466 U.S. 668 (1984)], we made clear that, to establish prejudice, a `defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Id., at 694, 104 S.Ct. 2052. In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence."
539 U.S. at 534, 123 S.Ct. 2527.
Here, the circuit court found as aggravating circumstances that the murder was committed during the course of a burglary and that the murder was especially heinous, atrocious, or cruel as compared to other capital murders. The circuit court also found as a statutory mitigating circumstance that Hunt had no significant history of prior criminal activity. The circuit court considered that Hunt's childhood "had been wrought with misfortune," that he had been placed in foster care at a young age, that he had a drug problem, and that he had had an abusive father. The circuit declined to find that this evidence constituted nonstatutory mitigating circumstances.
In reviewing Hunt's claim of prejudice under Strickland we have independently reweighed the aggravating circumstances that were presented in this case against the alleged nonstatutory mitigating circumstances that were not presented at the penalty phase. We are confident that death was the appropriate sentence in this case and that the alleged excluded mitigating evidence would not have effected the result. See Wiggins v. Smith.

VIII.
Hunt argues that the circuit court erred in denying relief on his claim that his appellate counsel was ineffective.
Hunt was represented on appeal by attorney J. Massey Relfe, Jr. Relfe was not called to testify at the Rule 32 proceedings. Neither was any evidence offered to support Hunt's claims that counsel was ineffective on direct appeal.
On appeal Hunt makes only a general claim that counsel was ineffective during his direct appeal. He identifies no specific deficiency. We agree with the United States Court of Appeals for the United States Eleventh Circuit:
"[W]e note that the record is silent as to why trial counsel did not pursue a motion to suppress the evidence obtained from Grayson incident to his arrest on Fourth Amendment grounds; Grayson's habeas counsel did not inquire as to trial counsel's reasons for not raising such a claim either during counsel's deposition or his testimony at the state habeas hearing. `An ambiguous or silent record is not sufficient to disprove the strong *1071 and continuing presumption [of effective representation]. Therefore, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment."' Chandler v. United States, 218 F.3d 1305, 1314 n. 15 (11th Cir.2000) (en banc) (quoting Williams v. Head, 185 F.3d 1223, 1228 (11th Cir. 1999))."
Grayson v. Thompson, 257 F.3d 1194, 1218 (11th Cir.2001). Hunt failed to meet his burden of proof in regard to this claim.

IX.
Hunt argues that we should give no deference to the circuit court's order because, he argues, the circuit court adopted the State's proposed order in toto.
"The Alabama Supreme Court and this Court have repeatedly upheld a circuit court's wholesale adoption of a proposed order prepared by one of the parties. See Ex parte Masonite Corp., 681 So.2d 1068 (Ala.1996); DeBruce v. State, 890 So.2d 1068 (Ala.Crim.App.2003); Slaton v. State, 902 So.2d 102 (Ala.Crim. App.2003); Hamm v. State, 913 So.2d 460 (Ala.Crim.App.2002); Dobyne v. State, 805 So.2d 733 (Ala.Crim.App. 2000); Pierce v. State, 851 So.2d 558 (Ala.Crim.App.1999); Lawhorn v. State, 756 So.2d 971 (Ala.Crim.App.1999); Jones v. State, 753 So.2d 1174 (Ala.Crim. App.1999); Knotts v. State, 686 So.2d 431 (Ala.Crim.App.1995); Grayson v. State, 675 So.2d 516 (Ala.Crim.App. 1995); Sockwell v. State, 675 So.2d 4 (Ala.Crim.App.1993); Cade v. State, 629 So.2d 38 (Ala.Crim.App.1993); Hallford v. State, 629 So.2d 6 (Ala.Crim.App. 1992); Holladay v. State, 629 So.2d 673 (Ala.Crim.App.1992); Thompson v. State, 615 So.2d 129 (Ala.Crim.App. 1992); Wright v. State, 593 So.2d 111 (Ala.Crim.App.1991); Hubbard v. State, 584 So.2d 895 (Ala.Crim.App.1991); Weeks v. State, 568 So.2d 864 (Ala.Crim. App. 1989); Morrison v. State, 551 So.2d 435 (Ala.Crim.App.1989)."
Coral v. State, 900 So.2d 1274, 1288 (Ala. Crim.App.2004), overruled on other grounds, Ex parte Jenkins, [Ms. 1031313, April 8, 2005] ___ So.2d ___ (Ala.2005).

X.
Hunt argues that the cumulative effect of the instances of ineffective assistance of counsel must be considered when considering his ineffective assistance of counsel claims.
We recently addressed this same issue in Brooks v. State, 929 So.2d 491 (Ala. Crim.App.2005), and stated:
"Other states and federal courts are not in agreement as to whether the `cumulative effect' analysis applies to Strickland claims. As the Supreme Court of North Dakota noted in Garcia v. State, 678 N.W.2d 568, 578 (N.D. 2004):
"`Garcia argues that even if trial counsel's individual acts or omissions are insufficient to establish he was prejudiced, the cumulative effect was substantial enough to meet Strickland's test. See Williams v. Washington, 59 F.3d 673, 682 (7th Cir.1995) ("In making this showing, a petitioner may demonstrate that the cumulative effect of counsel's individual acts or omissions was substantial enough to meet Strickland's test"); but see Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir.1990) ("cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own").'
"See also Holland v. State, 250 Ga.App. 24, 28, 550 S.E.2d 433, 437 (2001) (`Because the so-called cumulative error doctrine is inapplicable, each claim of inadequacy *1072 must be examined independently of other claims, using the two-prong standard of Strickland v. Washington.' (footnote omitted)); Carl v. State, 234 Ga.App. 61, 65, 506 S.E.2d 207, 212 (1998) (`Georgia does not recognize the cumulative error rule.'); Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir.1998) (`Not surprisingly, it has long been the practice of this Court to individually assess claims under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See, e.g., Hoots v. Allsbrook, 785 F.2d 1214, 1219 (4th Cir. 1986) (considering ineffective assistance claims individually rather than considering their cumulative impact.).').
"We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel. However, the Alabama Supreme Court has held that the cumulative effect of prosecutorial misconduct necessitated a new trial in Ex parte Tomlin, 540 So.2d 668, 672 (Ala.1988) (`We need not decide whether either of the two errors, standing alone, would require a reversal; we hold that the cumulative effect of the errors probably adversely affected the substantial rights of the defendant and seriously affected the fairness and integrity of the judicial proceedings.'). Also, in Ex parte Bryant, [Ms. 1990901, June 21, 2002] ___ So.2d ___ (Ala.2002), the Supreme Court held that the cumulative effect of errors may require reversal.
"If we were to evaluate the cumulative effect of the ineffective assistance of counsel claims, we would find that Brooks's substantial rights were not injuriously affected. See Bryant and Rule 45, Ala.R.App.P."
We, likewise, cannot say that Hunt's substantial rights were injuriously affected. Brooks.

XI.
Hunt also raises several other claims in his brief to this Court that were procedurally barred in a postconviction proceeding. The following claims were procedurally barred because they could have been, but were not, raised at trial or on direct appeal:
1) That Hunt's rights were violated because the jury did not designate what aggravating circumstance or circumstances that it found to exist;
2) That the trial court erred in failing to find a Brady violation in regards to James Sanders's testimony;
3) That the trial court erred in failing to find that Hunt's grand jury was not drawn from a fair cross section of the community;
4) That the trial court erred in finding that the death penalty does not constitute cruel and unusual punishment; and
5) That the cumulative effect of the error denied him a fair trial.
Hunt also claimed that the trial court erred in failing to find that he was deprived of the right to have a full record of his trial. This claim was barred because it was raised and addressed on direct appeal. See Rule 32.2(a)(3), (a)(4), and (a)(5), Ala. R.Crim.P.
For the foregoing reasons, we affirm the denial of Hunt's petition for postconviction relief.
AFFIRMED.
McMILLAN, P.J., concurs. SHAW, J., concurs in part and concurs in the result, with opinion. BASCHAB, J., concurs in the result. COBB, J., concurs in part and dissents in part, with opinion.
*1073 SHAW, Judge, concurring in part and concurring in the result.
I concur in all aspects of the main opinion with the exception of the analysis equating the review under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and the plain-error standard of review. See my special writing in Taylor v. State, [Ms. CR-02-0706, August 27, 2004] ___ So.2d ___ (Ala.Crim. App.2004) (Shaw, J., concurring in part and dissenting in part).
COBB, Judge, concurring in part and dissenting in part.
I concur with most of the analysis and resolution of the issues presented in the main opinion. I dissent from Part II of the opinion and from other portions of the opinion to the extent they hold that Hunt could not establish the prejudice prong of any claim of ineffective assistance of counsel, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), if the underlying substantive issue had been rejected by this Court on direct appeal following review for plain error. As I have previously stated, "I do not believe that Alabama law or the broader principles of due process allow for the preclusion of a finding of prejudice with regard to an ineffective-assistance-of-counsel claim simply because this Court or the Alabama Supreme Court examined the underlying substantive issue and found no plain error." Taylor v. State, [Ms. CR-02-0706, Aug. 27, 2004] ___ So.2d ___, ___ (Ala.Crim.App. 2004)(Cobb, J., concurring in part and dissenting in part). See also Powell v. State, 938 So.2d 449 (Ala.Crim.App.2005) (unpublished memorandum)(Cobb, J., concurring in part and dissenting in part); Harris v. State, [Ms. CR-01-1748, Oct. 29, 2004] ___ So.2d ___ (Ala.Crim.App.2004)(Cobb, J., concurring in part and dissenting in part); Woods v. State, [Ms. CR-02-1959, Aug. 27, 2004] ___ So.2d ___ (Ala.Crim.App. 2004)(Cobb, J., dissenting).
This important issue has not been resolved by the Alabama Supreme Court, which has stated, "Nor do we address whether our determination of the absence of plain error forecloses a determination of the existence of the prejudice required under Strickland v. Washington, 466 U.S. 668 (1984), for a claim of ineffective assistance of counsel. See Taylor v. State, [Ms. CR-02-0706, Aug. 27, 2004] ___ So.2d ___ (Ala. Crim.App.2004)." Ex parte Martin, 931 So.2d 759, 769 (Ala.2004).
For the foregoing reasons, I dissent from the portions of the opinion that hold contrary to my special writings and, I believe, contrary to the correct law regarding the analysis of plain error and prejudice under Strickland.

On Application for Rehearing
WISE, Judge.
The appellant, Gregory Hunt, appealed the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.App.P., attacking his capital-murder conviction and sentence of death. We affirmed the circuit court's denial of Hunt's Rule 32 petition. See Hunt v. State, [Ms. CR-02-0813, August 26, 2005] 940 So.2d 1041 (Ala.Crim.App.2005). In Part II of our opinion we addressed Hunt's claim that the circuit court applied the wrong standard when evaluating his claims of ineffective assistance of counsel. We specifically noted that the circuit court applied the law applicable at the time it concluded that a finding of no plain error by this Court on direct appeal would preclude a finding of prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
While this case was pending on rehearing, the Alabama Supreme Court released Ex parte Taylor, [Ms. 1040186, September *1074 30, 2005] ___ So.2d ___ (Ala.2005). The Supreme Court resolved the issue of whether a finding of plain error precludes a finding of prejudice and stated:
"Although it may be the rare case in which the application of the plain-error test and the prejudice prong of the Strickland test will result in different outcomes, a determination on direct appeal that there has been no plain error does not automatically foreclose a determination of the existence of the prejudice required under Strickland to sustain a claim of ineffective assistance of counsel. In determining whether to grant a Rule 32 petitioner relief on an ineffective-assistance claim, a court must examine both the plain-error and prejudice standards of review."
___ So.2d at ___.
In light of the Supreme Court's decision in Taylor, we have reexamined Part II of our opinion. Hunt's argument in his brief on this issue consists of the following:
"The trial court ruled that many of the grounds of the claims of ineffective assistance of trial and appellate counsel are effectively precluded because there had been a finding on direct appeal of no plain error with respect to the underlying substantive claim. (C. 808-09, Parts I.E; 810-11, I.G; 819, I.O; 821-26, I.P(1)-I.P(4); 830-40, I.P(8)-I.P(14); 858-60, I.DD). Specifically, the trial court reasoned that because this Court and the Alabama Supreme Court on direct appeal found no plain error and, therefore, must have found no manifest injustice resulting from the substantive errors that underlie the present claim of ineffective assistance of counsel, this Court cannot find that Mr. Hunt's lawyers' error resulted in prejudice under Strickland, 466 U.S. 668 (1984)."
(Hunt's brief at pages 23-24.) Hunt did not identify any specific issue he claims was incorrectly resolved by the circuit court. Rule 28(a)(7), Ala.R.App.P. states in part that a brief must contain: "A full statement of the facts relevant to the issues presented for review, with appropriate references to the record. . . ." Hunt's brief fails to comply with the requirements of Rule 28(a)(7), Ala.R.App.P.
Moreover, we have reviewed the issues presented in Hunt's brief. The issues that have been identified by merely citing page numbers in the Rule 32 record are: (1) counsel was ineffective for failing to argue that Hunt's arrest was not based on probable cause; (2) counsel was ineffective for failing to argue that Hunt was denied access to the law library and could not aid in his defense; (3) counsel was ineffective for failing to object to prior-bad-act evidence; (4) counsel was ineffective for failing to object to improper argument made by the prosecutor in his opening and closing statements; and (5) counsel was ineffective for failing to ensure that all the proceedings were transcribed.
In response to his first issue, this Court on direct appeal specifically found that Hunt's arrest was based on probable cause. We detailed the evidence in support of this claim in our opinion. This Court stated: "The record of these proceedings convinces this Court that there was clearly probable cause for the appellant's arrest." Hunt v. State, 659 So.2d 933, 948 (Ala.Crim.App.1994). Therefore, Hunt cannot show that counsel's performance was deficient.
Hunt argues that he was denied access to the law library and that counsel was ineffective in failing to argue that this prevented him from aiding in his defense. On direct appeal we specifically addressed this issue and noted that the issue had *1075 been raised in the circuit court. We stated:
"`While prison officials must provide prisoners with direct legal assistance or access to a law library, they are not required to provide both, so long as the constitutional requirement of "meaningful access" is met.' Ex parte Thigpen, 513 So.2d 101, 102 (Ala.Cr.App.1987). We find no error in this regard."
Hunt, 659 So.2d at 938. Hunt cannot show that his counsel's performance was deficient in this regard.
Hunt next argues that counsel was ineffective for failing to object to testimony that Hunt had burned down the victim's house and that Hunt had admitted to using drugs before the murder. On direct appeal we specifically held that evidence of prior hostilities between the victim and the defendant was admissible. We also held that evidence of Hunt's drug use before the murder was relevant to his intent. 659 So.2d at 939.
Moreover, the circuit court addressed this claim in the alternative in its order denying relief and stated:
"Hunt presented no evidence or legal argument at his evidentiary hearing establishing that he was prejudiced by trial counsel's failure to object. . . . The Court finds that Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudiced."
Relief was correctly denied on this claim.
Hunt argues that counsel was ineffective for failing to object to prejudicial arguments in the prosecutor's opening and closing statements. The circuit court also addressed these claims in the alternative and found that Hunt presented no evidence showing that he was prejudiced by the trial court's failure to object. Moreover, a great portion of our opinion on direct appeal addressed claims that the prosecutor's argument was erroneous. In each instance we found that the argument was not inappropriate. Hunt cannot show that counsel's performance was deficient in regard to these claims.
Last, Hunt argues that counsel was ineffective for failing to ensure that portions of the record were transcribed. The circuit court addressed this claim in the alternative and also found that Hunt failed to show that he was prejudiced. Also, we addressed this issue in-depth in our opinion on direct appeal. 659 So.2d at 951-57. Hunt is due no relief on this claim.
After carefully reviewing the Supreme Court's decision in Taylor and the issues raised in this case, we conclude that our original decision affirming the denial of Hunt's Rule 32 petition was correct.
APPLICATION FOR REHEARING GRANTED; AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and SHAW, JJ., concur.
NOTES
[1] Rule 31(a), states, in pertinent part: "When a party is represented by counsel, the clerk may not accept a brief from that party."
[2] This Court may take judicial notice of our prior records on appeal. See Ex parte Salter, 520 So.2d 213, 216 (Ala.Crim.App.1987).
[3] Hunt did not move for a continuance at the evidentiary hearing in order to secure the presence of the witnesses who failed to appear.
[4] The United States Supreme Court in Strickland stated that only the outcome-determinative test imposes a stricter standard of review than the standard imposed by the Strickland Court to establish prejudice. The Strickland Court remarked on the subtle differences between the standards of review:

"[T]he standards articulated today do not require reconsideration of ineffectiveness claims rejected under different standards. Cf. Trapnell v. United States, 725 F.2d [149], at 153 [(2d Cir.1983)] (in several years of applying `farce and mockery' standard along with `reasonable competence' standard, court `never found that the result of a case hinged on the choice of a particular standard'). In particular, the minor differences in the lower courts' precise formulations of the performance standard are insignificant: the different formulations are mere variations of the overarching reasonableness standard. With regard to the prejudice inquiry, only the strict outcome-determinative test, among the standards articulated in the lower courts, imposes a heavier burden on defendants than the tests laid down today."
466 U.S. at 696-97, 104 S.Ct. 2052. See also United States v. Olano, 507 U.S. 725, 735, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).
[5] We have consistently followed the Thomas rationale in affirming the denial of Rule 32 petitions in death-penalty cases. See Wood v. State, 891 So.2d 398 (Ala.Crim.App.2003) (opinion on return to remand); Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003); Slaton v. State, 902 So.2d 102 (Ala.Crim.App.2003); McGahee v. State, 885 So.2d 191 (Ala.Crim. App.2003); Hamm v. State, 913 So.2d 460 (Ala.Crim.App.2002); Baker v. State, 906 So.2d 210 (Ala.Crim.App.2001); Dobyne v. State, 805 So.2d 733 (Ala.Crim.App.2000); Flowers v. State, 799 So.2d 966 (Ala.Crim. App.1999).
[6] Ill.S.Ct.Rule 615(a) reads:

"Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."
This rule is virtually identical to Rule 45A, Ala.R.App.P.
[7] The holding in Jenkins applies to this case because this appeal was pending at the time that the decision in Jenkins was released. See Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).
[8] Hunt raised many issues concerning both the performance of his trial counsel and appellate counsel. At the time of the Rule 32 evidentiary hearing the two attorneys who represented Hunt at trial were deceased. Hunt did not call his appellate counsel to testify at the hearing.
[9] Other claims were also dismissed on this basis; we will discuss those claims throughout this opinion.
[10] Effective June 10, 1999, § 15-12-21(d)(1), Ala.Code 1975, was amended to provide: "In cases where the original charge is a capital offense or a charge which carries a possible sentence of life without parole, there shall be no limit on the total fee."
[11] Hunt's mother testified at the guilt phase and said that Hunt had a difficult childhood.
[12] To "life qualify" prospective jurors a judge asks the jurors whether they would automatically vote for the death penalty. See Morgan v. Illinois, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).
[13] Sanders, who was incarcerated at Walker County jail with Hunt, testified that Hunt told him that

"`He [appellant] said they were fussing and he was jealous and they were fussing over the guy she had been seeing and they got in a fight and he knocked her down and went into a rage because he was messed up on dope and started kicking her and abusing her and choking her . . . And, said that when she was laying [sic] on the ground he told her if she had to have one all the time he would give her one and he struck [sic] the broom handle between her legs. . . . He said she was bleeding and he got scared and called the police. . . . '"
Hunt, 659 So.2d at 945.
[14] Hunt makes no argument in this brief that counsel was ineffective for failing to cross-examine Loretta Martin; therefore, he has abandoned this claim. See Brownlee v. State, 666 So.2d 91 (Ala.Crim.App.1995).
[15] Indeed, Hunt filed numerous items with this Court, and we can find no evidence that Hunt has a lower than average cognitive functioning.